F. A. STRAUS & Co., INC., Plaintiff, *v.* CANADIAN PACIFIC RAILWAY COMPANY, Defendant.

Supreme Court, New York County, May 10, 1929.

*Neil P. Cullom* [*James E. Freehill* and *Henry W. Steingarten* of counsel], for the plaintiff.

*Hardin, Hess, Eder & Freschi* [*Harold B. Elgar* of counsel], for the defendant.

LYDON, J. This is an action in conversion, plaintiff alleging that the defendant failed to deliver three bales of silk, which defendant converted to its own use, and that the value of the said silk so converted was $1,763.59. On February 17, 1925, at Shanghai, China, the defendant received from Madier Freres & Cie, aboard the steamship *Empress of Russia*, in good order and condition, ten bales of yellow raw silk and ten bales of white raw silk consigned " to order: Notify F. A. Straus & Co., Inc., at New York, N. Y." The shipper paid to the defendant $223.65 freight.

The bill of lading issued by the carrier contained a clause to the effect that the " carrier shall not be responsible to any extent for any loss, damage, or delay arising from or consequent upon robbers, thieves of any kind, whether in the service of the carrier or not, * * * any act or omission, negligence, or fault or error in judgment," etc. It also contained a clause providing that all claims for loss or damage or injury to any of the goods for which the carriers are liable under the terms of the bill of lading shall be adjusted upon the basis of the market value of the said goods or property, or of goods or property of the same nature and quality at the place and time of the original shipment, unless the invoice or declared value of the goods shall be less than such market value, in which case such invoice or declared value shall be the maximum, and in any case not exceeding $100 for any one package, unless a higher value shall have been declared in writing at the time of shipment and *ad valorem* freight paid thereon. It was further provided in such bill that all claims arising under the bill of lading shall be settled according to the law of England.

The silk was loaded on the vessel and a receipt given therefor, and it was placed in the silk hold. When the ship reached Kobe, an officer of the vessel went to the silk room and found the lock had been broken, and it was thereupon replaced. Upon the arrival of

the ship at Vancouver, when the silk was unloaded, it was discovered that three bales of silk were missing.

The carrier claimed that in any event it could not be held for more than $300. The case was tried on a stipulation of facts, which was read to the jury. The facts showed that four watchmen permanently employed by the defendant carrier were sent on board the vessel on its arrival in Shanghai, and one of these watchmen was in the silk hold during the time the silk was loaded. The key to the silk hold was retained by an officer. On the arrival of the ship at Vancouver, when an examination was made, a piece of pipe such as is used for opening the butterfly bolts, securing the side door of the ship, was found near the starboard side door. Therefore, apparently at some time during the night of the eighth or ninth of February some person, either a member of the crew or some other person secreted on the vessel, went down to the silk room and forced the lock, opened the side door of the ship, and passed certain of the bales of silk out through the side door of the ship. The three bales of silk belonging to the plaintiff were stolen while they were in the defendant's custody.

The court submitted to the jury the following issues: (1) Did the theft of the plaintiff's merchandise occur through the defendant's negligence? (2) Was the theft committeed by one of the defendant's servants? The jury was further instructed that, if they found that the theft occurred through the defendant's negligence and was committed by one of its employees, they might disregard the limitation of liability contained in the bill of lading and return a verdict for the full amount, and, further, that the measure of damages for loss of goods by a carrier, when liable therefor, is their value at the destination to which it undertook to carry them. As the jury brought in a verdict for the plaintiff for the full amount claimed, $1,763.59, with interest, it is evident that the jury presumed as a fact that the theft was by defendant's employees, and that was a justifiable presumption from the facts presented. (*Kennel* v. *Rider*, 225 App. Div. 391; *United States ex rel. Matthews* v. *Massachusetts Bonding & Insurance Co.*, 238 N. Y. 334.)

The clause in the bill of lading, providing that the defendant is not to be liable in any event for theft, even if by one of defendant's own employees, is void, as there is no consideration moving to the shipper. "Agreements of limited liability are upheld, where the loss is due to ordinary negligence or to the wrongful act of another; * * * but the law remains that the carrier may not claim a limitation of liability to a certain amount for its affirmative wrongdoing." Any other rule of law would not be common sense, because it could never have been intended that a carrier could limit its

liability to a small figure, receive goods of value, and then deliberately steal them, and be held liable only for the limitation.

As to the clause in the bill of lading which provided that all claims arising under the bill of lading shall be settled according to the law of England, we have to consider the Harter Act, passed in 1893 (27 U. S. Stat. at Large, 445, chap. 105; 46 U. S. C. A. §§ 190–195), which provides specifically that it shall not be lawful for a master or owner of any vessel transporting merchandise from or between ports of the United States and foreign ports to insert in any bill of lading or shipping document any clause or agreement whereby the carrier shall be relieved from liability for negligence, fault or failure to properly care for the property, and provides that any or all words or clauses of such import inserted in bills of lading or shipping receipts shall be null and void and of no effect.

In the case of *The Kensington* (183 U. S. 263) it was held that, although as a general rule the *lex loci* governs, it is also true that the intention of the parties to a contract will be sought out and enforced. Nevertheless, both of these elementary principles are subordinate to and qualified by the doctrine that neither by comity nor by will of the contracting parties can the public policy of a country be set at naught. That case proceeds to hold that under the Harter Act the arbitrary limitation in the bill of lading, unaccompanied by any right to increase the amount by an adequate or reasonable proportional payment, was void; and this rule seems to apply, even if the clauses therein are valid in the foreign country referred to. The contract in this case was made at Shanghai, China, and was to be performed in this country, since the merchandise had to be carried to New York city, and, therefore, the contract is subject to the Harter Act.

The limitation of liability contained in the bill of lading is void, because it is against public policy and without consideration, in that no choice of rates was given. It does not appear in this case that the defendant offered the shipper any choice of rates. In this case there was absolutely no choice, because under the bill of lading the shipper could have received only the limited indemnity of $100 per package or market value at point of origin, whichever shall be the less, which indemnity would be the maximum for which the defendant shall be liable. That does not constitute a choice. (*Kilthau* v. *International Mercantile Marine Co.*, 245 N. Y. 361.)

As I have reached the conclusion that the jury was justified in its finding, the motion to set aside the verdict must be denied. Thirty days' stay. Sixty days to make a case.