## Court of Appeals.

June, 1903.

## THE PEOPLE v. ROBERT L. MARTIN.

(175 N. Y.)

PERJURY—PENAL CODE, SEC. 96—OATHS TAKEN IN THIS STATE IN COM-
PLIANCE WITH LAWS OF FOREIGN STATES.

Section 96 of the Penal Code, relating to perjury, includes not only
any and every false and corrupt oath and affidavit taken or made in
this State which is permitted or required by our statutes, but also in-
cludes any and every oath or affidavit so taken or made if permitted or
required by the laws of any other State of the Union, whenever under
the general law of comity, which exists between the States, they would
be considered and given effect in this State; and hence an officer of a
foreign corporation, who is required by a statute of the State where
it was created to take an oath as to the amount of capital stock paid
in, who swears falsely to such amount before a notary public in this
State, is guilty of the crime of perjury.

Affirming 77 App. Div. 396, 17 N. Y. Crim. Rep. 150.

APPEAL from an order of the Appellate Division of the Su-
preme Court in the First Judicial Department, entered Decem-
ber 26, 1902, reversing a judgment of the New York Court of
General Sessions, which allowed a demurrer to the indictment,
and directing the defendants to plead thereto.

The defendants demurred upon various grounds, but princi-
pally upon the ground that the facts stated did not constitute
a crime, and that is practically the only ground relied upon.

The facts, so far as material, are stated in the opinion.

Frederic R. Kellogg and Franklin Bien, for appellants.

William Travers Jerome, District Attorney (Howard S.
Gans, of counsel), for respondent.

MARTIN, J.: We have reached the conclusion that the judg-
ment of the Appellate Division should be affirmed. We also

VOL. XVII—26

concur in the able opinion of that court, and should rest our decision thereon but for the intimation therein that the words "required by law," contained in the statute defining the crime of perjury, are to be limited to affidavits and oaths required by the laws of this State. With that suggestion we do not agree. Hence, the only question we deem it necessary to consider is whether, under our statute, a person taking a false and corrupt oath in this State, required or permitted by the laws of a sister State, is guilty of the crime of perjury.

Section 96 of the Penal Code, so far as material to the question involved, declares: " A person who swears . . . that any . . . affidavit or other writing by him subscribed, is true, . . . on any occasion in which an oath is required by law, or is necessary for the prosecution or defense of a private right, or for the ends of public justice, or may lawfully be administered, and who . . . on such . . . occasion, wilfully and knowingly . . . deposes . . . falsely, in any material matter, or states in his . . . affidavit, . . . any material matter to be true which he knows to be false, is guilty of perjury." The indictment in this case charges that the defendants were respectively president and secretary of the Delaware Surety Company, a corporation duly organized and existing under the laws of that State; that by the general corporation law thereof the president, with the secretary or treasurer of every such corporation, is required, on the payment of the capital stock thereof, to make a certificate stating whether it has been paid in cash or by the purchase of property, and stating also the total amount of the capital stock paid in, which certificate must be signed and sworn to by the president and secretary or treasurer, and when so verified to be filed in the office of the Secretary of State; that on the 15th of May, 1901, in the city of New York, the defendants appeared before a notary public, duly appointed, sworn and qualified in and for the county of New York, and thereby duly authorized and em-

powered to administer oaths and take affidavits, and falsely, corruptly and knowingly made oath to a certificate that the entire capital stock of said surety company of $1,000,000 had been paid in cash, which they uttered and published as true, and the same was filed in the office of the Secretary of State of the State of Delaware.

The important question is whether the indictment shows that the officer before whom the affidavits of the defendants were taken had jurisdiction to take their oaths thereto. That he had general authority to take affidavits there can be no doubt. (Executive Law, sec. 85; Laws of Delaware, vol. 17, ch. 212.) But the more difficult question is whether the defendants' affidavits were taken and sworn to upon an occasion in which an oath was required by law, was necessary for the prosecution or defense of a private right, was for the ends of public justice, or was one in which oaths might be lawfully administered, within the spirit and meaning of section 96. The strenuous contention of the appellants is that the occasion mentioned in the statute must be one established, required or permitted by the laws of this State, and that the fact that such affidavits were required or permitted by the laws of a sister State, or they were necessary for the prosecution or defense of a private right or for the ends of public justice in such other State, does not constitute such an occasion as is contemplated by the statute. This seems a very narrow, technical and restricted construction of the broad language of that statute, one that can hardly be considered as within the purpose of the Legislature, and should not be adopted unless required by that statute or some other controlling principle of law.

It is to be observed that the statute has essentially enlarged the rule which existed at common law in relation to the crime of perjury. The evident purpose of the Legislature was to adopt a statute which would include and provide for the punishment of the act of taking a false and corrupt oath in this

State whenever it was required or permitted by our laws or by the laws of any other State or Commeonwealth that might be regarded or treated as valid here.    In other words, the purpose of this statute was to include within the definition of the crime of perjury the taking of any and every false and corrupt oath, unless it was purely voluntary and extra-judicial, in not being required, authorized or permitted by any law that might be enforced or carried into effect .in our jurisdiction or elsewhere, or in not being necessary for the prosecution or defense of a private right, or for the ends of public justice wherever sought to be administered.    That this was the broad purpose of that statute is not only plainly indicated by the language employed, but when we examine it in the light of the history of its adoption, in connection with the other provisions of the Penal Code relating to the subject of perjury, and construe it in accordance with the provisions of section 11 of that Code, it becomes obvious that such was its intent and purpose.

While the statutes of one State which derive their force from the authority of the Legislature that enacts them have no absolute or exclusive force or vigor beyond the boundaries of the State, but must be regarded as foreign laws, of which courts do not take judicial notice, still they may be proved and taken into consideration in proper cases, subject to the provisions of domestic statutes and of the Constitution.    This principle is based upon the common and international law originating in the comity which exists between civilized nations and States, to which, as between the States of the Union, is added the force of the Federal Constitution    It is true there has been some difference of opinion as to the effect of the provisions of the Constitution, which declares that " full faith and credit shall be given in each State to the public acts, records and judicial proceedings of every other State," it being claimed, upon the one hand, that this provision is unlimited and requires each State to give full and absolute faith and credit to the acts of

another State, and, on the other hand, that it imports no more than that such credit should be given by one State to the public acts of another as by the rules of comity between the States is ordinarily conceded to the laws of another State. The latter view is sustained by the general weight of authority and especially by the decisions of the courts of this State. The observance or recognition of foreign or interstate law rests in comity and convenience and in the aim of the law to adapt its remedies to the great ends of justice. This principle of comity is not, however, unlimited, as cases sometimes arise where the observance of such laws would be neither convenient nor answer the purpose of justice. Where foreign laws are in conflict with our own regulations, or our local policy, or do violence to our views of religion or public morals, or may do injustice to our citizens, they are not to be regarded in this State. Whatever force and obligation the laws of one State have upon another depends upon the laws and regulations of the latter; that is to say, upon its own proper jurisprudence or polity, or upon its own express or tacit consent. In harmony with the general law of comity obtaining among the States composing the Union, the presumption to be indulged in is that the law of a sister State is valid and when proved should be recognized, unless forbidden by the laws of our State, or by its public policy to be deduced from the general course of legislation, or from the settled adjudications of its highest court. (Cowell v. Springs Co., 100 U. S. 55; Christian Union v. Yount, 101 U. S. 252, 256.) In the absence of any positive rule affirming, denying or restraining the operation of a foreign law, courts of justice presume the tacit adoption of them by their own government, unless they are repugnant to its policy, or prejudicial to its interest. It is not the comity of the courts, but the comity of the State, which is administered and ascertained in the same way and guided by the same reasoning by which all other principles of municipal law are ascertained and guided. " The comity thus extended to

other nations is no impeachment of sovereignty.  It is the voluntary act of the nation by which it is offered, and is inadmissible when contrary to its policy, or prejudicial to its interests.  But it contributes so largely to promote justice between individuals, and to produce a friendly intercourse between the sovereignties to which they belong, that courts of justice have continually acted upon it, as a part of the voluntary law of nations."    (Bank of Augusta v. Earle, 13 Peters, 519.)

It is under the principles of this general law of comity that one State is permitted to procure the testimony of witnesses in another, or to obtain their affidavits or acknowledgments to be used in the former.    (1 Greenleaf on Evidence, sec. 320.) Under it, contracts made in one State are enforced in another; rights of action given by the laws of one State are so enforced, even though of a tortious nature.    These general rules of comity have been so often recognized and adopted by the courts of this State and under such a variety of circumstances, that reference to specific cases would be a work of supererogation. (Bank of Augusta v. Earle, 13 Peters, 519, 589; Paul v. Virginia, 8 Wall. 168; Christian Union v. Yount, 101 U. S. 252, 256; Parsons v. Lyman, 20 N. Y. 103; Bonati v. Welsch, 24 N. Y. 157; Leonard v. Columbia Steam Nav. Co., 84 N. Y. 48; Debevoise v. N. Y., L. E. & W. R. R. Co., 98 N. Y. 377; Matter of Waite, 99 N. Y. 433; Cross v. U. S. Trust Co., 131 N. Y. 330; Barth v. Backus, 140 N. Y. 230; Stoddard v. Lum, 159 N. Y. 265; Howarth v. Angle, 162 N. Y. 179.)

We think it is clear that in adopting the statute relating to the crime of perjury the Legislature intended to include not only any and every false and corrupt oath and affidavit taken or made in this State which is permitted or required by our statutes, but also to include any and every oath or affidavit so taken or made, if permitted or required by the laws of any other State of the Union, whenever, under the general laws of comity which exists between the States, they would be considered and

given effect in this State. Hence, it is apparent that under this principle it will be the duty of the court before which this indictment is pending, on the trial and upon proof of the statute of Delaware requiring the affidavit made by the defendants, to take that statute into consideration and to give it full force and effect, as it is not repugnant to but in consonance with our laws. Any other conclusion would require an utter disregard of a firmly established principle of law, open an avenue of immunity for perjury, and thus seriously affect the proper administration of justice. It is a matter of common knowledge that many, if not most, of the corporations doing business in this State, in which our citizens are principal officers and stockholders, are incorporated under the laws of some other State. If such officers are to be exempt from the consequences of taking a false and corrupt oath in pursuance of the statute under which their corporation was organized, because taken in this State, the security given by the laws of its organization would be practically nullified and this State would become a paradise for perjurers.

It is to be borne in mind that there is no attempt in this case to enforce the criminal law of the State of Delaware, but to simply have accorded to the law of that State the force to which it is entitled and thereby establish the existence of an occasion where the oath taken by the defendants was required. The infraction of the criminal law, for which the defendants are indicted, was that of our own State, which forbids the taking of a false and corrupt oath whenever lawfully permitted or required. The crime was committed in this State and affected the peace, dignity and good order of our own Commonwealth, and the fact that it may have directly or indirectly affected a corporation which was organized under the State of Delaware in no way affects the question as to where the crime was actually committed.

We have confined our discussion to the one question suggested at the beginning of this opinion, and, as we are satisfied that the case was correctly decided by the learned Appellate Division, we regard any special consideration of the other questions, or any review of the authorities relied upon by that court, as unnecessary.

The judgment of the Appellate Division should be affirmed.

BARTLETT, HAIGHT, VANN, CULLEN and WERNER, JJ., concur; O'BRIEN, J., dissents.

Judgment affirmed.

## NOTE ON PERJURY.  SECTION 96 OF PENAL CODE.

### (See note, 12 N. Y. Crim. Rep. 256.)

*Subornation of perjury.*—Evidence of attempts to induce other persons to testify falsely in the same action, which bears directly upon the motive and intent, has relations to the same transactions and purpose, to establish a fact in issue upon the trial, to which it is material and connected in point of time, is admissible on trial of defendant upon indictment charging subornation of perjury.  (People v. Van Tassel, 13 N. Y. Crim. Rep. 160.)

*Failing to remember.*—It is perjury, under section 96 of the Penal Code, for a witness to falsely testify that he does not remember what occurred in connection with the criminal transaction for which an indictment has been had, where he well knows and remembers facts in regard to the same which are material in determining the guilt or innocence of the accused. (People v. Doody, 16 N. Y. Crim. Rep. 466, 72 App. Div. 372.)

*Corroboration of oral evidence.*—In order to convict of perjury upon oral evidence there must be two witnesses, or one witness supported by corroborating and independent circumstances, except where the proof of perjury is necessarily based upon circumstantial evidence.  (Id.)