F. A. STRAUS AND CO., INC., Appellant and Respondent, *v.* CANADIAN PACIFIC RAILWAY COMPANY, Respondent and Appellant.

(Argued October 1, 1930; decided November 18, 1930.)

*Neil P. Cullom* and *James E. Freehill* for plaintiff, appellant and respondent. The theft having been committed by one of defendant's employees, the limitation of liability contained in the bill of lading is void. (*Fein* v. *Weir*, 129 App. Div. 299; 199 N. Y. 540; Schouler Bailments & Carriers, § 429; *Nowack* v. *Metropolitan St. Ry. Co.*, 166 N. Y. 433; *Wamsley* v. *Atlas S. S. Co.*, 168 N. Y. 533; *Magnin* v. *Dinsmore*, 62 N. Y. 35; *Honig* v. *Riley*, 244 N. Y. 105; *Gillespie* v. *Platt*, 19 Misc. Rep. 43; *Heuman* v. *Powers*, 226 N. Y. 205.) Clause EW-21 is void as against public policy, it being a purely arbitrary limitation of liability as distinguished from an agreed valuation, and supported by no valuable consideration to the shipper. (*St. John* v. *Companhia*, 263 U. S. 119; *Mynard* v. *Syracuse R. R. Co.*, 71 N. Y. 180; *Kilthau* v. *International Mercantile Marine*, 245 N. Y. 361.) Clauses EW-2 and EW-23 in the bill of lading exempting defendant from liability for negligence and for loss arising out

of theft by its employees are void because contrary to public policy and will not be enforced. even though valid under the law of England. (*The Kensington*, 183 U. S. 263; Carver on Carriers, § 103-a; *Claffin* v. *Meyer*, 75 N. Y. 260; *The Seneca*, 163 Fed. Rep. 591; *The Ghazee*, 172 Fed. Rep. 368; *Wheeler* v. *Oceanic Steam Nav. Co.*, 125 N. Y. 155; *Gerli* v. *Compagnie*, 230 N. Y. Supp. 282; *Moore* v. *Duncan*, 237 Fed. Rep. 780; *Matter of Snyder*, 190 N. Y. 166; *Single* v. *Snyder*, 160 Fed. Rep. 627; *Gulf* v. *Hume*, 27 S. W. Rep. 110.)

*Harold B. Elgar* and *Frank Rashap* for defendant, respondent and appellant. Under the contract of affreightment the carrier was exempted from any liability for loss. (*Smith* v. *N. Y. C. R. R. Co.*, 24 N. Y. 222; *Kenny* v. *N. Y. C. R. R. Co.*, 125 N. Y. 422; *Wheeler* v. *Oceanic Steam Nav. Co.*, 125 N. Y. 155; *Guillaume* v. *Hamburg Packet Co.*, 42 N. Y. 212; *Wilson* v. *N. Y. C. R. R. Co.*, 97 N. Y. 87; *Gerli & Co.* v. *Compagnie Generale Transatlantique*, 132 Misc. Rep. 752; *Heuman* v. *Powers Co.*, 226 N. Y. 205; *Moore* v. *Duncan*, 237 Fed. Rep. 780; *Wupperman* v. *The Carat Prints*, 63 Fed. Rep. 266; *The Titania*, 19 Fed. Rep. 101; *The Oranmore*, 92 Fed. Rep. 396; *Forder* v. *Great Western R. R. Co.*, [1905] 2 K. B. 532; *Beal* v. *South Devon R. R. Co.*, 3 H. & C. 337; *Great Western R. R. Co.* v. *Genister*, 29 L. T. Rep. [N. S.] 422.) The limitation of liability contained in clause EW-21 of the contract of affreightment was properly enforced. (*D' Utassy* v. *Barrett*, 219 N. Y. 420; *Mariani Bros.* v. *Wilson Sons & Co.*, 188 App. Div. 617; *Starace & Co.* v. *Raporel S. S. Line*, 114 Misc. Rep. 111; *Glanzer* v. *Cunard S. S. Co.*, 214 App. Div. 473; *Millhiser* v. *Beau Site Co.*, 251 N. Y. 90; *Union Pacific Ry. Co.* v. *Burke*, 225 U. S. 317; *Hart* v. *Pennsylvania R. R. Co.*, 112 U. S. 331; *Kuhnhold* v. *Compagnie Generale Transatlantique*, 251 Fed. Rep. 387; *Tewes* v. *North German Lloyd S. S. Co.*, 186 N. Y. 151; *American Ry. Express Co.* v. *Linden-*

*burg,* 260 U. S. 584; *American Ry. Express Co.* v. *Levee,* 263 U. S. 19; *Clay* v. *N. Y. C. R. R. Co.,* 224 App. Div. 508.)

HUBBS, J. The defendant, a common carrier, undertook to carry, under a through bill of lading, a quantity of silk from Shanghai, China, *via* Vancouver, to New York city, consigned to order, notify F. A. Straus & Co., Inc. When the boat upon which the silk was shipped reached Vancouver, it was discovered that three bales of silk had been stolen from the silk room in which it had been placed at Shanghai. This is an action in conversion to recover the value of the silk stolen. The trial court submitted to the jury, without objection on the part of the defendant, the following issues:

*First.* Did the theft of the silk occur because of the defendant's negligence?

*Second.* Was the theft committed by the defendant's servants?

The jury found that the theft occurred because of the defendant's negligence and that the theft was committed by its servants.

The evidence presented a question of fact and the verdict of the jury was justified, provided the defendant is not exempt from liability under a provision of the bill of lading. (*United States ex rel. Matthews* v. *Massachusetts Bonding & Ins. Co.,* 238 N. Y. 334; *Hasbrouck* v. *N. Y. C. & H. R. R. R. Co.,* 202 N. Y. 363; *The Ghazee,* 172 Fed. Rep. 368.)

The defendant contends that it is exempt from liability for theft by its servants or others or for negligence of persons in its employ, by reason of the provisions of clause EW-2 contained in the bill of lading, which reads: " The carrier shall not be responsible to any extent for any loss, damage or delay arising from or consequent upon * * * robbers, thieves of whatever kind, whether in the service of the carriers or not, pilferage * * * any act or omission, negligence, default or

error in judgment of the carriers' pilot, master, officers, marines, engineers, crew, stevedores, lightermen, warehousemen, agents or other persons whomsoever in the service of the carriers or their agents, or for whom the carriers would otherwise have been responsible, whether on board the said ship," etc.

It has long been the rule in the Federal courts that an agreement between a shipper and carrier which purports to absolutely exempt the carrier from liability for its negligence is void. The reasons for the rule have been stated to be that the effect of an exemption from liability for negligence is to encourage a lack of care on the part of the carrier; that the shipper and carrier are not upon equal terms and the shipper is at the mercy of the carrier unless protected by the law, and that considerations of public policy require that the shipper be so protected. (*N. Y. C. R. R. Co.* v. *Lockwood,* 17 Wall. [U. S.] 357; *The Kensington,* 183 U. S. 263.)

Early in the jurisprudence of this State it was decided that an agreement between a shipper and a common carrier exempting the carrier from liability for negligence was void as against public policy. (*Cole* v. *Goodwin & Story,* 19 Wend. 251, 281; *Gould* v. *Hill,* 2 Hill, 623.) Later the courts changed their position and held that an agreement between a shipper and common carrier exempting the carrier from liability constituted a valid, enforcible contract. The contract was conceived to be a purely private one, in which the public had no concern and it was presumed that the carrier parted with a sufficient consideration for the exemption, and that any other rule would constitute " an unwarrantable restriction upon * * * commerce." (*Door* v. *New Jersey Steam Navigation Co.,* 11 N. Y. 485; *Nelson* v. *H. R. R. R. Co.,* 48 N. Y. 498; *Cragin* v. *N. Y. C. R. R. Co.,* 51 N. Y. 61.)

Although the United States courts and the courts of most of the States adhered to the Federal rule (See 10

C. J. 155, where the decisions in other jurisdictions are collated), the courts of this State continued to follow their early decisions, and enforced agreements exempting common carriers from liability for negligence. (*Kenney* v. *N. Y. C. & H. R. R. R. Co.*, 125 N. Y. 422.) There it is said: " The rule is firmly established in this State that a common carrier may contract for immunity from its negligence, or that of its agents."

While the early decisions in this State expressed the public policy of the State at the time, changed conditions have resulted in a change of the public policy of the State. The rule of freedom of contract, which reflected the public policy of the State in the days of the canal boat and stage coach, has ceased to be applicable under modern conditions. That fact has been recognized by the Legislature in various enactments. In 1911 the Legislature added to the Personal Property Law section 189 (Laws of 1911, ch. 248; Cons. Laws, ch. 41) which reads: " A carrier may insert in a bill, issued by him, any other terms and conditions, provided that such terms and conditions shall not:

" (a) Be contrary to law or public policy, or

" (b) In any wise impair his obligation to exercise at least that degree of care in the transportation and safe-keeping of the goods entrusted to him which a reasonably careful man would exercise in regard to similar goods of his own."

The section reads the same as section 3 of the Uniform Bills of Lading Act (4 U. L. A. p. 8).

The effect of that section is to prevent a common carrier from inserting in a bill of lading for an intrastate shipment a provision totally exempting it from liability for its negligence.

The Public Service Commission Law, section 38 (Laws of 1913, ch. 344; Cons. Laws, ch. 48), provides that " No contract, stipulation or clause in any receipt or bill of

lading shall exempt or be held to exempt any common carrier * * * from any liability for loss," etc.

The General Business Law, section 91, subdivision (i) (Laws of 1909, ch. 25; Cons. Laws, ch. 20) provides: " A warehouseman may insert in a receipt, issued by him, any other terms and conditions, provided that such terms and conditions shall not: * * *

" (b) In any wise impair his obligation to exercise that degree of care in the safekeeping of the goods entrusted to him which a reasonably careful man would exercise in regard to similar goods of his own."

Section 331 of the Banking Law (Laws of 1914, ch. 369; Cons. Laws, ch. 2) makes all provisions of law affecting warehousemen applicable to safe deposit companies.

By those various statutes the will of the Legislature has been clearly expressed to the effect that contracts which purport to totally exempt in the cases named from liability for negligence are against the public policy of the State and the early decisions, which expressed a different view and represented the public policy of the State when made, have been superseded. Public policy is necessarily variable. It changes with changing conditions. It is evidenced by the expression of the will of the Legislature contained in statutory enactments. Whatever the term may imply in other jurisdictions, in this State " The courts have often found it necessary to define its juridical meaning, and have held that a state can have no public policy except what is to be found in its Constitution and laws. * * * Therefore, when we speak of the public policy of the state, we mean the law of the state, whether found in the Constitution, the statutes or judicial records." (*People* v. *Hawkins*, 157 N. Y. 1, at p. 12.)

The power to determine what the policy of the law shall be rests with the Legislature within constitutional limitations, and when it has expressed its will and estab-

lished a new policy, courts are required to give effect to such policy. (*South & Central American Commercial Co., Inc.*, v. *Panama Railroad Co.*, 237 N. Y. 287, 291.)

It is contended by the defendant that even though the law of this State prevents a common carrier from contracting for exemption from liability for negligence on an intrastate shipment, such law has no application to this case, as the shipment was a shipment from a British port to a British port, under the British flag, and, therefore, the laws of Great Britain govern.

It was also stated in the bill of lading that the contract should be construed according to the law of Great Britain, and it was stipulated at the trial that the exemption clause, EW-2, was valid under those laws.

The bill of lading was a through bill of lading, the goods to be carried by the defendant's boat from Shanghai to Vancouver, and from there, by its railroad, to New York city.

As a general rule, the validity of a contract is determined by the law of the jurisdiction where made, and if legal there is generally enforcible anywhere. There is, however, a well-established exception to the rule to the effect that a court will not enforce a contract though valid where made if its enforcement is contrary to the policy of the forum. (*People* v. *Martin*, 175 N. Y. 315; Williston on Contracts, vol. 3, § 1792.)

The progressive enactments of the Legislature in this State during comparatively recent years have been so pronounced and fundamental that there can be no doubt that it has deliberately reached the conclusion, contrary to the early decisions, that to allow public service corporations by contract to absolutely exempt themselves from liability for negligence is opposed to the best interest of the citizens of the State. It follows that the courts of the State should not enforce such an exemption clause contained in a bill of lading issued by a common carrier at a foreign port for the delivery of goods to a citizen

within this State, even though the contract of carriage provides that it shall be governed by the law of a foreign jurisdiction under which the exemption clause would be valid. .The conclusion which we reach is in harmony with the decisions of the Federal courts. In the case of *The Kensington* (183 U. S. 263) it was said: " The contention amounts to this: Where a contract is made in a foreign country, to be executed at least in part in the United States, the law of the foreign country, either by its own force or in virtue of the agreement of the contracting parties, must be enforced by the courts of the United States, even although to do so requires the violation of the public policy of the United States. To state the proposition is, we think, to answer it. It is true, as a general rule, that the *lex loci* governs, and it is also true that the intention of the parties to a contract will be sought out and enforced. But both these elementary principles are subordinate to and qualified by the doctrine that neither by comity nor by the will of contracting parties can the public policy of a country be set at naught."

The same principle has often been announced by this court. (*Lemmon* v. *People*, 20 N. Y. 562, at p. 602; *People* v. *Martin, supra; Russian Reinsurance Co.* v. *Stoddard*, 240 N. Y. 149, at p. 163.) The principle is not applicable, however, in cases where acts of Congress have taken the question out of the domain of the State law. (*Adams Express Co.* v. *Croninger*, 226 U. S. 491; *United Lead Co.* v. *Lehigh Valley R. R. Co.*, 156 App. Div. 525, 527; affd., 215 N. Y. 751.)

The bill of lading contained a provision known as clause EW-21 which reads: " All claims for loss of or damage or injury to any goods or property for which the carriers are liable under the terms hereof shall be adjusted upon the basis of the market value of the said goods or property or of goods or property of the same nature and quality at the place and time of original

shipment unless the invoice or declared value of the said goods or property shall be less than such market value, in which case such invoice or declared value (whichever shall be the less) shall be the maximum, provided, however, that in no case shall the carriers be liable for or in respect of the said goods or property beyond the sum of $10.00 per cubic foot nor in any case exceeding $100.00 for any one package, or any article not enclosed in a package unless a higher value shall have been declared in writing at the time of shipment and *ad valorem* freight paid thereon."

· The general rule is that for damage resu.ting irom. the negligent loss of goods, a carrier is liable for their value at the destination to which it undertakes to carry them. (*St. Johns N. F. Shipping Corp.* v. *S. A. Companhia Geral Commercial Do Rio De Janeiro*, 263 U. S. 119.)

A provision of a contract of shipment which purports to arbitrarily limit a carrier's liability, without consideration therefor, and without choice of rates, is void. (*Union Pacific R. R. Co.* v. *Burke*, 255 U. S. 317.)

The bill of lading does not state the value of the silk. The attempt to arbitrarily limit liability — to the value of the silk at the time and place of shipment in the event that the value was declared and an *ad valorem* rate paid, and otherwise to $100 per package — was without consideration. Under the wording of the bill of lading, the shipper could not, in any event, recover more than the value of the goods at the time and place of shipment, even though it placed a higher valuation thereon and paid an *ad valorem* rate. Such attempted absolute limitation, of liability, regardless of the rate paid, makes the clause void. (*Kilthau* v. *International Mercantile Marine Co.*, 245 N. Y. 361.)

We cannot agree with the conclusion reached by the Appellate Division that clause EW-2 is void under the provisions of the Harter Act (U. S. Comp. Stat. § 8029;

U. S. Code, tit. 46, § 190). That act by its express terms deals only with shipments by vessels between ports of this country and the ports of foreign countries. It does not purport to regulate shipments by vessels between ports of a foreign country or between ports of different foreign countries even though the goods shipped are intended ultimately to reach this country by shipment over a railroad from a foreign country.

The judgment of the Appellate Division in so far as it limits the recovery to $100 a package should be reversed and the judgment of the Trial Term affirmed, with costs to the plaintiff-appellant in the Appellate Division and in this court.

CARDOZO, Ch. J., POUND, CRANE, LEHMAN, KELLOGG and O'BRIEN, JJ., concur.

Judgment accordingly.