JOSEPH SCIRE, Plaintiff, *v.* AMERICAN EXPORT LINES, INC., Defendant.

FLORENCE SCIRE, Plaintiff, *v.* AMERICAN EXPORT LINES, INC., Defendant.

Supreme Court, Trial Term, Oneida County, August 11, 1949.

R. R. *Calli* for plaintiffs.

*Irving J. Higbee, United States Attorney for the Northern District of New York (Robert J. Leamy of counsel)*, for defendant.

BASTOW, J. The plaintiffs, brother and sister, bring these actions to recover damages alleged to have been sustained by each when certain baggage owned by each was lost, destroyed or damaged while in the possession of the defendant.

The cases were tried before the court, a jury having been waived. It was stipulated at the commencement of the trial that the defendant is engaged in the steamship transportation of passengers; that on May 2, 1947, the plaintiffs, residents of Utica, New York, boarded the S. S. *Marine Perch* — operated by the defendant — at Palermo, Italy, to be transported to the United States; that each plaintiff had on board one large trunk and upon arrival at the point of destination each plaintiff demanded the delivery of said trunks and the defendant failed to deliver them. It was further stipulated that the trunks

were accepted in apparent good condition; that the transportation of the trunks was part of the obligation of the defendant; that each plaintiff paid the regular full fare for transportation upon the ship and the defendant agreed to take on board and transport the trunks as part of the personal transportation of the plaintiffs.

It is found from the testimony offered upon the trial that some three months prior to November, 1947, the plaintiffs journeyed from New York to Naples, Italy. They visited in Italy and on October 16, 1947, they purchased from the defendant for the sum of $342 a passenger ticket entitling them to be transported on the S. S. *Marine Perch* from Palermo, Italy, to New York City. The ship was scheduled to sail from Palermo on November 2, 1947.

It was stipulated upon the trial that exhibit 2 is a facsimile of the ticket issued to the plaintiffs. This so-called ticket is printed on both sides of a sheet of paper approximately eight by twelve inches. At the top of the front page in bold type appear the words " American Export Lines — Inc.— ". Underneath in somewhat smaller type is the word " agent ".

Commencing on the lower part of the front page and covering practically all of the reverse side are twenty-seven paragraphs of contract provisions. In approaching a consideration of these provisions it should be kept in mind that the Court of Appeals has said that " the law is settled in this state that a ticket in this form, issued by a steamship company for a voyage across the ocean, is more than a mere token or voucher. It is a contract, creating the obligation and defining the terms of carriage ". (*Murray* v. *Cunard S. S. Co.*, 235 N. Y. 162, 165–166.) The rule was recently reiterated in *Reichman* v. *Compagnie Generale Transatlantique* (290 N. Y. 344, 351).

Turning to the contract a portion of paragraph 19 reads as follows: " 19. The fare for transportation under this ticket is based partly upon limitations and restrictions on the value, amount, and the nature of passenger's baggage, effects and property, and Carrier's liability and obligations in respect thereof. Full fares include transportation of baggage not exceeding weights and volumes set forth in Carrier's current passenger traffic rules and regulations and additional charge at rates prescribed therein will be payable for any excess. Carrier in no event shall have any liability whatsoever for any baggage, effects, or property consisting of money, jewelry, or other articles of high value mentioned in Title 46, section 181, U. S.

Code, unless the same have been delivered to and accepted by Carrier for transportation under bill of lading, or have been deposited with purser. Carrier in no event shall have any liability whatsoever for the loss, destruction, theft, embezzlement, delay or damage of or to any passenger's baggage, effects, or property, not shipped under bill of lading, whether deposited or intended for deposit with purser or carried or intended for carriage in baggage rooms, or retained in passenger's custody, in excess of $100 for a passenger paying full adult fare or, in the case of a passenger paying less than full adult fare, in excess of a proportion of such sum based on the relation of the fare paid to such full adult fare, which amount it is agreed value of same does not exceed, unless on or before deposit of same with purser or delivery of custody of same to Carrier, or if not so deposited or delivered, then on or before embarkation, passenger shall declare in writing to Carrier a higher value for same and shall pay Carrier such sum, not exceeding five per cent on such declared excess, as may be fixed by Carrier, in which event any liability of Carrier shall not exceed the sum so declared."

This contract provision is in many respects similar to the one considered in *Reichman* v. *Compagnie Generale Transatlantique* (290 N. Y. 344, 350, *supra*). If it is found to be the unaltered contract of the parties it would be valid and enforcible. The plaintiffs were given a choice of rates. (See *Straus & Co.* v. *Canadian Pacific Ry. Co.*, 254 N. Y. 407, 416.) The fare paid was based partly upon limitations and restrictions on the value, amount and nature of the baggage of the passengers. The remaining choice was the so-called " full fare " plus the payment of a sum not exceeding 5% on the excess value of the baggage as declared by the passengers.

The defendant for a first separate and complete defense alleges in its answers that it was acting as a berth agent in the transportation of the person and property of the plaintiffs and that the passenger ticket purchased by plaintiffs was signed expressly for the master of the vessel involved by an agent of the United States and accordingly the ticket was a contract with the owner or charterer of the vessel and the defendant is under no personal liability.

Upon the trial proof was offered by the defendant that it was acting as agent to manage and conduct the business of vessels assigned to it by the United States. The S. S. *Marine Perch* was assigned to defendant under this agreement but was not

named in the original agreement or any of the supplements thereto although the names of at least thirteen other vessels are specifically named in exhibits to the original contract and the supplements thereto of May 12, 1944.

It has been stated that the word "agent" was printed underneath the defendant's name at the top of the ticket. At the end of the contract provisions appear the words "For the Master By American Export Lines, Inc. As agent for the Master By ————————." The blank space had no name inserted.

No proof was offered upon the trial that the defendant, or anyone acting on its behalf, either in the formal contract, or otherwise, disclosed to the plaintiffs that the principal was the United States of America acting by and through the War Shipping Administration.

The rule is recognized that where a contract is made by an authorized agent in the name and on the account of a competent principal, the agent incurs no liability upon or with reference to the contract. (1 Mechem on Agency [2d ed.], § 1357.)

This same author, however, states in section 1169 that "if, though disclosing the fact that he is an agent, he does not disclose who his principal is, but keeps the latter's identity concealed, the agent will ordinarily be personally liable unless he has clearly excluded such a result."

The general rule may be stated that where one party to a written contract is known to the other to be in fact acting as agent for some known principal, he does not become personally liable whether he signs individually or as agent. On the other hand, although known to be acting for an unknown principal, he is personally liable. Knowledge of the real principal is the test, and this means actual knowledge and not suspicion. (*Ell Dee Clothing Co.* v. *Marsh,* 247 N. Y. 392, 397; *Meyer* v. *Redmond,* 205 N. Y. 478, 483.) Section 321 of the Restatement of the Law of Agency provides: "Unless otherwise agreed, a person purporting to make a contract with another for a partially disclosed principal is a party to the contract.

"Comment: a. A principal is a partially disclosed principal when, at the time of making the contract in question, the other party thereto has notice that the agent is acting for a principal but has no notice of the principal's identity."

This rule of law has been adopted and followed in the Federal courts (see *Horan* v. *Hughes,* 129 F. 248, affd. 129 F. 1005).

*Shilman* v. *United States* (164 F. 2d 649) cited by defendant, is not authority to the contrary. In that case it appeared the principal was disclosed. The contract was signed " War Shipping Administration " and on the line below " Grace Line, Agents ".

If liability exists, the defendant may not escape it upon the ground that the undisclosed principal, the United States of America, is solely responsible to the plaintiffs for any damages they may have sustained.

This conclusion is fortified by an additional happening relating to the transportation of plaintiffs' baggage by the defendant on this occasion. It is found from the testimony of the plaintiffs that on November 2, 1947, and prior to boarding the vessel plaintiffs delivered their respective trunks to the defendant and received two receipts. Miss Scire testified she paid an additional sum of money for her trunk and her brother's trunk at that time. She could not remember the amount.

The receipt issued to Mr. Scire was received in evidence as Exhibit 1. A similar receipt except for the number thereon, which had been delivered to the sister, was surrendered to the defendant after the arrival of Miss Scire in New York.

The claim adjuster for the defendant testified that the ticket showed the payment of 1,600 lire — the equivalent of $2.80 — when the ticket was issued on October 16, 1947. This amount was paid for handling the baggage prior to the passengers boarding the ship. In any event the testimony of Miss Scire that she paid an additional amount of money when she delivered the two trunks and received the two receipts is not disputed by any direct testimony.

Turning to the receipt, Exhibit 1, there is found printed at the top of an orange piece of paper approximately four by six inches the words " American Export Lines, Inc." The word " agent " does not appear thereon. There further appears on the front of this paper in bold type " Receipt of Baggage checked N.r 3444 to New York. Belonging to ——————. To be shipped on S. S. Marine Perch. Sailed on 2 Nov 1947 from Palermo. Trunks 1."

All of the reverse side of this paper is covered with seven paragraphs of printing entitled at the top " Rules and Conditions for Transportation of Baggage."

A witness for the defendant testified that each passenger received a similar ticket and a duplicate was placed on the

piece of baggage. The passenger's copy is retained by him for surrender at port of debarkation.

Among other rules and conditions printed on this receipt is the following: "(4) In no case is the Company responsible for the contents of baggage, regardless of the quality and value of same. * * * "

Underneath these printed rules there is the following statement: " All the rules and conditions regarding baggage indicated on the Passage Contract Ticket, and not included in the foregoing, are in force *provided they are not in contradiction to the above.*

American Export Lines, Inc."<br>(Emphasis supplied.)

It is obvious that the quoted portion of rule 4 directly contradicts paragraph 19 of the passage contract ticket. The latter limits the company's liability to $100 except as excess value is declared. The new contract between the parties as evidenced by the receipt was one exempting the company from liability in every case.

It is suggested by defendant that the receipt constituted a modification of the original contract, which according to paragraph 24 of the latter instrument could only be modified by a writing signed by an officer of the carrier.

It does not appear there was any attempt to modify the original ticket contract. Instead, a new contract was made between the plaintiffs and the defendant — in its individual capacity and not as agent — with an unstated sum of money being paid by plaintiffs at the time the receipts were issued.

The conditions for the transportation of baggage as set forth on the receipt are more comprehensive than those in the original contract. Provision is made in the receipt for placing the baggage on board the ship, the payment of porterage expense, the claiming of baggage at the port of destination and the disposal thereof if not claimed within a stated time.

The conclusion is reached that the liability of the defendant for the contents of the two trunks must be determined by the provisions of the receipts which superseded and took the place of the original contract. In other words for reasons not disclosed the defendant saw fit to contract with the parties for transportation of themselves and their baggage in accordance with the passenger ticket. When the baggage was received a new contract was made as to the company's liability or non-

liability for the " contents of the baggage." This latter agreement reaffirmed the provisions of the passenger ticket except as they contradicted the provisions of the receipt.

The defendant as a common carrier, by force of its public employment, became an insurer of the property entrusted to its care and liable for its loss, irrespective of the cause, unless from the act of God or the public enemy. Involved in this greater liability and absorbed by it was a lesser liability as bailee for hire; of no consequence while the greater liability existed, but surviving the destruction of that, so that when the carrier ceased to be liable as carrier, it yet remained liable as bailee. (*Wheeler* v. *Oceanic Steam Navigation Co.*, 125 N. Y. 155, 160.)

The general rule is that a carrier may, by special contract or by a notice assented to by the passenger, limit its liability as insurer. In *Mynard* v. *Syracuse, B. & N. Y. R. R. Co.* (71 N. Y. 180, 183) it was held that general words such as " from whatever cause arising " might well be satisfied by limiting them to such extraordinary liabilities as carriers are under without fault or negligence on their part but that every presumption is against an intention to contract for immunity for not exercising ordinary diligence in the transaction of any business and hence the general rule is that contracts will not be so construed, unless expressed in unequivocal terms.

Subsequently in *Straus & Co.* v. *Canadian Pacific Ry. Co.* (254 N. Y. 407, *supra*) it was held that an agreement between a shipper and carrier which purported to absolutely exempt the carrier from liability for its negligence was void.

Applying these rules to the contract made between the parties for the transportation of the contents of the baggage it is found that the agreement is void because first, its language is so ambiguous that it will not be construed as exempting the defendant from liability for its negligence and second, such a contract of exemption from negligence — if it could be spelled out from the language used — would not be enforcible against the plaintiffs.

In construing the second agreement there is no problem of limitation of liability based upon a choice of rates — that was eliminated from the original contract by the express provision of the subsequent agreement. To paraphrase the language used in *Wheeler* v. *Oceanic Steam Navigation Co.* (125 N. Y. 155, 159, *supra*) the provisions of the contract met the plaintiffs at the port of destination and placed them at the mercy of the

defendant. If the baggage contents were restored, it was through the grace of those in command; if they were not delivered " in no case is the Company responsible for the contents of the baggage, regardless of the quality and value of same."

A contract or regulation limiting the liability of the carrier for baggage, being in derogation of the common law, is to be construed most strongly against the carrier and in the light of public policy (13 C. J. S., Carriers, § 878). For the same reasons a carrier should not be permitted to enter into two contracts with a passenger and place itself in a position where it could claim either was a binding agreement depending upon the circumstances and jurisdiction in which the carrier found itself.

Upon the trial the plaintiffs proved the delivery of the baggage to the defendant. Upon the arrival of their ship in New York, a witness called by the defendant testified he boarded the ship and went in the hold. He described all the baggage stored there to be in a " sad state ". Some were wet, some smashed, and some oil soaked. No competent proof was offered by the defendant to show the cause thereof.

The passenger ordinarily makes a prima facie case by proof of the delivery of the baggage to the carrier in good condition and its loss or redelivery in a damaged condition. It is not essential for the passenger to establish negligence or the facts from which negligence may be inferred, for, in the absence of proof as to how the baggage was lost, it may be inferred that the loss was due to the negligence or lack of care of the carrier. (10 Am. Jur., Carriers, § 1799, citing *Holmes* v. *North German Lloyd S. S. Co.*, 184 N. Y. 280.)

The plaintiff, Joseph Scire, offered proof that the fair and reasonable value of the articles in his trunk which were lost or destroyed was $1,261 and the value of the trunk was $40. The plaintiff, Florence Scire, offered proof that the fair and reasonable value of the articles in her trunk, which were not delivered to her, was $1,018 and the value of her trunk, which was broken to pieces, was $30. While only the contents of the two trunks were covered by the second agreement, it is found that the trunks, which were transported under the original agreement, were each less than the limited liability of $100 for each passenger.

The plaintiff, Joseph Scire, is entitled to recover from the defendant the sum of $1,301, together with costs and disbursements of the action.

The plaintiff, Florence Scire, is entitled to recover from the defendant the sum of $1,048, together with costs and disbursements of the action.

I direct that judgments be entered accordingly.