DOROTHY HAAG, Also Known as DOROTHY HAWTHORNE, Appellant, *v.* NORMAN BARNES, Respondent.

First Department, November 29, 1960.

*Alfred A. Rosen* for appellant.

*Phoenix Ingraham* for respondent.

STEVENS, J.   This paternity proceeding was instituted pursuant to section 64 of the New York City Criminal Courts Act. The complaint was dismissed on motion on the ground that a contract previously entered into between the parties, in Illinois, was a bar to this proceeding.   Complainant appeals from such determination.

Complainant, then and since 1947 a resident of New York, met defendant, a resident of Illinois, in 1954.   At that time complainant was employed as a law secretary.   Acquaintance ripened into friendship and, complainant alleges, from and as a result of the association a child was born to her in Illinois, December 11, 1955.

On January 12, 1956, the parties entered into an agreement in Illinois by which defendant undertook to pay the sum of $275 per month for the support of complainant and the infant.   The agreement provided that it should "in all respects be interpreted, construed and governed by the laws of the State of

Illinois '', and it contained a provision that complainant should reside in Illinois for two years thereafter unless she obtained the written consent of defendant to live elsewhere. The agreement, which did not acknowledge paternity, was valid under the then laws of Illinois (Rev. Stat. of Ill., ch. 17, § 18, as amd.). Both parties were represented by counsel of their own choosing.

It is not disputed that defendant, apparently a person of means, has paid substantially more than the sums called for by the agreement. It appears also, though the infant was born in Illinois, that complainant for a period prior to the birth and for two years thereafter lived in California.

Defendant sought dismissal of the complaint pursuant to section 63 of the New York City Criminal Courts Act and section 121 of the Domestic Relations Law, contending that a binding agreement had been entered providing for generous support of the child, which defendant had fully performed and even provided additional support.

On appeal, appellant asserts that the laws of New York do not bar this proceeding but impose obligations on the defendant, and that the Illinois statute does not bar this proceeding because it expresses a policy different from and contrary to the laws of New York. She contends also that the most significant contacts are in New York.

Defendant, a resident of Illinois, contends the agreement is governed by the laws of Illinois, was valid there, is not contrary to the public policy of New York, and should control.

'' As a general rule, the validity of a contract is determined by the law of the jurisdiction where made, and if legal there is generally enforcible anywhere. There is, however, a well-established exception to the rule to the effect that a court will not enforce a contract though valid where made if its enforcement is contrary to the policy of the forum. (*People* v. *Martin*, 175 N. Y. 315; Williston on Contracts, vol. 3, § 1792.) '' (*Straus & Co.* v. *Canadian Pacific Ry. Co.*, 254 N. Y. 407, 414; Restatement, Conflict of Laws, § 332.)

'' Public policy is necessarily variable. It changes with changing conditions. It is evidenced by the expression of the will of the Legislature contained in statutory enactments.'' (*Straus & Co.* v. *Canadian Pacific Ry. Co., supra*, p. 413.)

Certainly the policy of the forum (New York) is not offended by the mere fact that the parties entered into an agreement. Section 63 of the New York City Criminal Courts Act recognizes that the parties may agree or compromise for support of either the mother or the child. It places a restriction upon the effect of such agreement by providing that it shall not be binding

until the court " shall have determined that adequate provision has been made and is fully secured and shall have approved said agreement or compromise."

Is the fact that at the time the agreement was entered into the Illinois statute provided for release from all legal liability without judicial approval upon payment of a stated sum sufficient to warrant a holding that such agreement will not be recognized or enforced as contrary to the public policy of this State? The Illinois statute at the time of the agreement read as follows: " § 18 Release of reputed father by mother of child. The mother of a bastard child, before or after its birth, may release the reputed father of such child from all legal liability on account of such bastardy, upon such terms as may be consented to in writing by the judge of the court having jurisdiction herein of the county in which such mother resides: Provided, a release obtained from such mother in consideration of a payment to her of a sum of money less than eight hundred dollars in the absence of the written consent of the judge of the court having jurisdiction herein, shall not be a bar to a suit for bastardy against such father, but if, after such release is obtained, suit be instituted against such father and the issue be found against him, he shall be entitled to a set-off for the amount so paid, and it shall be accredited to him as of the first payment or payments: And, provided, further, that such father may compromise all his legal liability on account of such bastard child, with the mother thereof, without the written consent of such judge, by paying to her any sum not less than eight hundred dollars." (L. 1871–1872, p. 198; § 18, added by L. 1889, p. 61, § 1, amd. June 28, 1919 by L. 1919, p. 422, § 1.)

The agreement recites that the defendant had advanced in excess of $2,000 to complainant prior to its execution, agreed to and did pay $800 counsel fees, and the amount of support agreed upon was not predicated upon the minimal provided by the statute, and such payments are to be continued until the infant reaches the age of 16 years. The sums paid were in excess of that provided for by the agreement and cannot be said to be inadequate. Under such conditions it is the agreement and not the statute which should govern the attitude of our courts so that the rule and not the exception should apply. If no policy of the forum is offended, comity and good morals should require recognition of the agreement, as well as the requirement that full faith and credit be accorded the statute, a public act, and agreements executed thereunder. (U. S. Const., art. IV, § 1.)

Since the defendant was a resident of Illinois, the appellant executed the agreement there and the payments exceeded the

minimum requisite to obtain judicial approval in Illinois, the failure to obtain the written consent of a judge may be considered as a mere formality insufficent to render the law inapplicable or to invalidate the agreement. (Cf. *Rhyne* v. *Katleman*, 206 Misc. 202, affd. 285 App. Div. 1140.)

The object of the Illinois statute and of our public policy, as expressed by statute where a natural child is involved, is to provide for the support and welfare of such child, and to assure that the child will not become a public charge. (See New York City Criminal Courts Act, § 62; Domestic Relations Law, § 120.) The support obligation of a father of a child born out of wedlock is purely by virtue of statute, and when, by agreement and performance thereunder, adequate support is assured, no public policy of the State is offended. The mere fact that a father may be wealthy, while a proper item for consideration, is not the sole criterion. (Cf. *Schaschlo* v. *Taishoff*, 2 N Y 2d 408.) Nor will it alone warrant the application of another and different law to that generally governing the validity of contracts. While the appellant adverts to the *Auten* case (*Auten* v. *Auten*, 308 N. Y. 155) that case affords no support for her position and may be distinguished readily. The parties there, prior to and subsequently, were residents of England. The agreement was executed in New York for convenience, but at the time of execution the parties realized, recognized and contemplated that the payments would necessarily be expended in England. The "most significant contacts with the matter in dispute was England."

In the instant case both parties were represented by counsel and the agreement expressly provides that it shall "in all respects be interpreted, construed and governed by the laws of the State of Illinois." The appellant was not so unfamiliar with legal process as is the average layman for she had worked as a law secretary. Moreover, looking to the facts as recited in her affidavit she resided in California for some months before the birth of the child on December 11, 1955, and for a period of approximately two years thereafter. The complaint is sworn to February 28, 1959. It is obvious that the most significant contacts were not New York. Nor can New York fairly be said to have the "most interest in the problem" to the exclusion of or paramount to the interests of Illinois.

In the case before us there is capacity, mutual assent, designation of the State whose law shall govern, a grouping of the elements which indicate that up to the institution of this proceeding the more significant contacts had been Illinois, and no

provision so offensive to our public policy as to warrant our rejection of the agreement. (See, generally, Beale, Conflict of Laws, §§ 332.2, 332.3, 347.2 *et seq.*)

The order appealed from should be affirmed on the law, the facts and in the exercise of discretion, without costs to either party.

BASTOW, J. (dissenting). The appellant filed a complaint in the Court of Special Sessions alleging that she was a resident of the City of New York and that respondent is the father of her child born out of wedlock in December, 1955. Defendant moved to dismiss the complaint upon the ground that there was in existence a binding agreement between the parties that was a bar to this action. The motion was granted.

It appears that defendant is a man of considerable wealth residing in the State of Illinois but sojourning from time to time in New York. The parties met in this State in 1954 where complainant had resided since 1947. During her pregnancy complainant went to Illinois at the invitation of defendant where the child was born. Thereafter, she returned to this State but acting upon instructions of defendant's attorney returned to Illinois.

There in January, 1956 the parties entered into an elaborate agreement covering some 12 pages in the printed record. The agreement recites that both parties were of Chicago but appellant claims that she is and has been a resident of this State. The agreement was signed by appellant in Illinois but she swears and defendant does not deny that he executed the contract in this State. It is conceded that the agreement was never approved by any court of competent jurisdiction.

The motion to dismiss was granted in an opinion of two sentences stating that the agreement was a bar to the present action. We are unable to agree with this summary disposition of the matter. It may be surmised that this conclusion was reached by virtue of the provisions of section 63 of the New York City Criminal Courts Act, section 121 of the Domestic Relations Law and the pertinent Illinois statute. (Rev. Stat. of Ill., ch. 17, § 18, in effect prior to July 5, 1957.) The latter statute stated in substance that court approval of such a compromise was not required if the agreement provided for the payment to the mother of any sum not less than $800. All of this was repealed in 1957 and the foreign State now operates under a statute more similar to ours.

If it could be found as a fact that complainant was at all times from December, 1955 to the present a resident of this

State we would have presented the issue as to whether the agreement could bar the present proceeding, since it is contrary to the public policy of this State. Such public policy of this State in this area of the law has been recently stated (cf. *Schaschlo* v. *Taishoff*, 2 N Y 2d 408, 411). If such residence was established the fact that the agreement provides that it shall be governed by the laws of Illinois would not necessarily prevent the courts of this State from exploring its validity inasmuch as the agreement has not been judicially approved. It has recently been stated that " The validity of a contract is determined by the local law of the state chosen by the parties for this purpose unless * * * (c) application of the chosen law would be contrary to a fundamental policy of the state which would be the state of the governing law in the absence of an effective choice by the parties." (Restatement, 2d, Conflict of Laws, Tentative Draft No. 6, § 332-a.)

Here there was sufficient contact with this State by the contracting parties to at least require further exploration of the facts. It must be conceded that the present record is inadequate to make a determination. It is not clear from the affidavits before us as to the exact residence of the complainant during the years from 1955 to the present. She claims residence in this State from 1947 to the present " except for a residence in California as will be shown " in the affidavit. The ensuing statements as to residence in California are vague and indefinite. She was there from some indefinite period before the birth of the child. After the agreement was executed she received permission from defendant — in conformity with the agreement — to go to California where she lived for approximately two years.

In our opinion there should not have been a summary dismissal of the proceeding. It should be remitted to the Court of Special Sessions for a hearing and proper findings as to complainant's residence at the time of executing the agreement and during the ensuing years to the commencement of this proceeding. Thereupon, a disposition might be made of the motion to dismiss giving full consideration to the rights of the parties and the public policy of this State.

BREITEL, J. P., and McNALLY, J., concur with STEVENS, J.; BASTOW, J., dissents and votes to remand in opinion, in which VALENTE, J., concurs.

Order, entered on March 11, 1960, granting defendant's motion to dismiss the complaint affirmed, without costs.