(98 App. Div. 165)

WEBER et al. v. MAPES.

(Supreme Court, Appellate Division, First Department. November 11, 1904.)

1. NEGLECT OF AGENT—EFFECT ON PRINCIPAL.

　Where the contract under which plaintiffs produced defendant's play provided that defendant could terminate the contract on plaintiffs' failure to pay defendant his royalties as provided therein, defendant could so terminate the contract, though plaintiffs had arranged with their agent to remit the royalties, which he had neglected to do.

2. CONTRACT—WAIVER—BREACH.

　Where plaintiffs forfeited their contract by failure to pay royalties thereunder, the forfeiture is not waived by defendant's acceptance of the royalties in arrears at the time defendant gave notice terminating the contract.

Appeal from Special Term, New York County.

Action for an injunction by Joseph M. Weber and another against Victor Mapes. From an order denying a motion for preliminary injunction, plaintiffs appeal. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, O'BRIEN, and LAUGHLIN, JJ.

Louis J. Vorhaus, for appellants.
John B. Doyle, for respondent.

PATTERSON, J. The plaintiffs applied for an injunction pending suit to restrain the defendant from "leasing, letting, selling, disposing of or in any manner interfering with the play 'Captain Barrington,' or the production thereof, or any right, title, or interest therein" (of the plaintiffs), during the remainder of the term for which a contract had been made between the parties to this action, and for other relief. The motion was made upon a summons and complaint, and affidavits of the plaintiff Weber and of Abraham Bernard, an agent of the plaintiffs. Upon the hearing of the motion, answering affidavits were submitted of the defendant and of one Charles Richman. It appears that the plaintiffs, Weber and Fields, were theatrical managers, and that the defendant, Mapes, was the author of a play called "Captain Barrington." On or about the 13th of March, 1903, the plaintiffs and the defendant entered into a contract by which, in consideration of the sum of $1,000 then paid, and of a stipulation on the part of the plaintiffs to pay royalties as set forth in the agreement, the defendant assigned to the plaintiffs the exclusive right to produce the play in the United States of America and Canada; and this right or concession was made under stringent obligations imposed upon and assumed by, the plaintiffs. It was agreed, among other things, that, if the play were not produced by the plaintiffs on or before a stipulated day, they should return to the defendant or his agent all manuscripts of the play; that all rights of the plaintiffs in and to the play should cease; that they (the plaintiffs) should produce such play at a first-class theater in a first-class manner, and that no performance of the play should be given by their authorization with any other actor than Charles Richman in the leading part, except with the written consent of the defendant; that they (the plaintiffs) should furnish to the defendant or his agent weekly statements of the gross receipts of the play, wherever performed, and make payments of royalties promptly each week. The agreement then contains the following stipulation:

"If the said parties of the second part [the plaintiffs] shall at any time fail to fulfill any of the conditions set forth in Article Sixth of this agreement [which provides for time and manner of payment of royalties] the said party of the first part [the defendant] or his authorized agent, may thereupon by a registered letter addressed to the said parties of the second part to their address, give notice terminating this agreement, and all rights granted or assigned by the said party of the first part to the said parties of the second part shall thereupon revert to the said party of the first part, but without prejudice to any right to compensation or damages, or cause or causes of action that

the said party of the first part may or might have in respect to any breach or breaches of this agreement."

There are other provisions of the contract imposing obligations upon the plaintiffs, but it is not necessary now to advert to them.

The plaintiffs did produce the play under this contract, but they failed to make payments of royalties or send statements as required for a period of three weeks; the last sent being for the week ending January 18, 1904. On February 19, 1904, the defendant sent to the plaintiffs a registered letter, which was received by them. In that letter he called their attention to the fact that the royalties had not been remitted to him; that he had demanded them of the plaintiffs' representative, Mr. Isaacs, who, it is admitted, was the person upon whom to make demand; and stating that:

"Under the terms of our contract relating to 'Captain Barrington,' I am given the privilege (in Article 7) of terminating the contract, in case you do not make payments of royalties promptly each week, by sending you a notice to that effect by registered mail. I now therefore inform you that I desire to terminate and do hereby terminate our contract and reclaim from you any and all rights granted and assigned to you by the contract."

The object of the present action is to secure relief against the forfeiture of the contract. The plaintiffs allege that they would be subjected to great hardship if a strict enforcement of the terms of the contract is allowed against them. The court below denied the motion for an injunction, and from the order entered thereupon this appeal is taken.

It is clear, as held at the Special Term, that the defendant was altogether within his right in the course he pursued in terminating the contract. The plaintiffs had arranged with their agent, Isaacs, to remit the royalties to the defendant, but Isaacs neglected to do so. His neglect was theirs. It is evident from the terms of the contract that the plaintiffs thoroughly understood what would be the consequences of a failure to remit the royalties. In very precise and exact terms those consequences are stated in the contract. It appears further that, relying upon his contractual right, the defendant, upon terminating the contract, made other arrangements with respect to the production of the play and the realization of income therefrom. It is suggested, however, that the forfeiture was waived by the acceptance of the royalties in arrear at the time the defendant gave notice of his intention to terminate the contract. It seems that the plaintiffs made a tender of the past-due royalties, and that they were accepted. There is a conflict in the affidavits as to what took place at the time those royalties were thus tendered and accepted. The affiant Bernard states that he tendered the money to the defendant, and asked him if he would stand upon his notice of rescission, and that he understood from the conversation that the defendant would not insist upon the forfeiture. But the defendant states that he told Bernard that the royalties were moneys due to him, and that he would not couple the receipt thereof with the discussion of any default arising by virtue of plaintiffs' nonpayment of royalties at the times provided, and that he said nothing which would justify such understanding as Bernard de-

posed to. The receipt of the money under the terms of the contract, and in view of the defendant's absolute right thereto, cannot, upon the only facts now before us, be construed as a waiver.

The court below was right in refusing to grant an injunction pending suit, and the order should be affirmed, with $10 costs and disbursements. All concur.