**HAL ROACH STUDIOS, Inc., v. FILM CLASSICS, Inc.**
No. 309, Docket 20244.

Circuit Court of Appeals, Second Circuit.

July 15, 1946.

Schwartz & Frohlich, of New York City (Louis D. Frohlich and Herbert P. Jacoby, both of New York City, of counsel), for appellee.

Stillman & Stillman, of New York City (I. Maurice Wormser and David B. Stillman, both of New York City, of counsel), for appellant.

Before CHASE, CLARK, and FRANK, Circuit Judges.

CHASE, Circuit Judge.

The plaintiff is a California corporation engaged in producing motion picture photoplays. The defendant is a New York corporation engaged in distributing such photoplays. On August 19, 1943, the two entered into a contract by which the plaintiff granted the defendant exclusive license to distribute for reissue purposes a large number of its productions. Many of these films were then being distributed by Loew's, Inc. and the license granted to the defendant was to begin on the expiration of these prior rights. One of these films was "Topper" which was not to be available to the defendant until July 16, 1947. The defendant, however, wanted the rights to this film at an earlier date, and requested the plaintiff to negotiate with Loew's, Inc. for the termination of their license. The termination was effected, expressly subject however, to the right of Loew's Inc. to complete any unplayed exhibition contracts then in effect; and, on July 20, 1944, the plaintiff and the defendant entered into the contract here in dispute which superseded the provisions of the original contract in so far as the film entitled "Topper" was concerned and will be hereinafter referred to as the "Topper" contract. Under this contract, "Topper" was made immediately available for distribution by the defendant in consideration of the payment to the plaintiff of 35% of the gross receipts from exhibition in the United States and Canada and 25% of those from foreign display, $10,000.00 of which was paid in advance. Beginning six weeks after the first public exhibition of the film, monthly thereafter until January 1, 1945, and weekly thereafter not later than two weeks following the week covered, the defendant was to render to the plaintiff a statement of the gross receipts; and, beginning at the same time and monthly thereafter, the defendant, after recouping the advance, was to remit to the plaintiff the latter's share of the gross receipts. It was further agreed that:

"6 (b). The part of the gross receipts payable hereunder to the Licensor [the plaintiff] are hereby irrevocably and unconditionally assigned to the Licensor, and until the same shall have been paid over to the Licensor shall constitute a trust fund for the sole use and benefit of the Licensor.

\*　\*　\*　\*　\*　\*

"14. If the Licensee fails to furnish the Licensor with itemized statements required to be furnished hereunder by the Licensee, or if the Licensee fails to remit to the Licensor any sums of money due to the Licensor hereunder, in the manner and at the times in this agreement provided for, and should any such default continue for a

period of thirty (30) days after notice demanding such performance is sent by registered mail to the Licensee, the Licensor may, at its election, cancel or terminate this agreement at any time after the happening of any such event * * *"

The defendant rendered all statements as agreed but has not paid over the monies admittedly due and owing to the plaintiff since sometime in January, 1945, when the agreed recoupment was completed.

On April 2, 1945, the plaintiff mailed to the defendant at the address specified in the agreement, a registered and duly postpaid letter constituting the notice required by Paragraph 14 of the contract. The defendant still refused to pay the royalties and this suit was brought to recover the monies withheld and to rescind the contract as well.

The defendant conceded the amount of royalties accrued but filed a counterclaim for royalties received by the plaintiff from Loew's, Inc. for displays by the latter of "Topper" after July 20, 1944. It also alleged as justification for its failure to pay the accrued royalties, both this exhibition of "Topper" by Loew's and breaches by the plaintiff of the original contract of August 19, 1943. The district court held the counterclaim and the attempted justifications groundless, granted the plaintiff judgment for royalties due and decreed rescission of the "Topper" contract. From so much of the decree as dismissed the counterclaim and granted rescission the defendant has appealed.

■ The contract provided that:

"19. This agreement and its validity, construction and effect shall be governed by the laws of the State of New York, United States of America."

The provision for rescission is one going to the "essential validity" of the contract and deals with consequences flowing from failures in performance of that contract. Under orthodox conflict of laws rules this provision is to be given effect by the forum according to the law of the place of performance. Restatement, Conflict of Laws (1934) §§ 358, 359; Goodrich, Conflict of Laws (1938) § 111; Stumberg, Conflict of Laws (1937) 237-39; Ocean Steamship Co.

v. Queensland, 1941, 1 K.B. 402. Where, however, there is no single place of performance, and there are many jurisdictions with which the contract has close association, there seems no reason, apart from the policy of the forum, why the parties cannot specify the law of one jurisdiction as controlling, so long as there is that sufficient relationship to make it reasonable that the law chosen should apply. Decisions to the seeming contrary have been so on the basis of the policy of the forum, Jones v. Oceanic Steam Nav. Co., Ltd., 1924, 2 K.B. 730; Oceanic Steam Nav. Co., Ltd. v. Corcoran, 2 Cir., 9 F.2d 724, 57 A.L.R. 163; Straus & Co., Inc., v. Canadian Pac. Ry., 254 N.Y. 407, 173 N.E. 564, or on the ground that there was an apparent place of performance the law of which forbade choice of another law, Ocean Steamship Co. v. Queensland, supra. Since no fixed policy to the contrary has been established in this court, Paragraph 19 is controlling and the rights of the parties herein are to be determined by the law of New York.

■ The breaches by the plaintiff which the defendant relied on as the excuse for not making payments as they accrued under the contract was that the plaintiff had failed to perform the "Topper" contract in that it had after July 20, 1944, knowingly permitted Loew's Inc., to continue to distribute the motion picture "Topper" "in violation and in utter disregard of the exclusive right and license granted defendant" and had failed to perform the original contract in that it had not delivered certain films as agreed; and that the plaintiff after defendant had demanded an accounting failed and refused to account. The "Topper" contract provided that Loew's, Inc., might play off any unplayed exhibition contracts it had in foreign countries and both the parties agreed by way of their acceptance noted on a letter written by Loew's, Inc., July 21, 1944 that if some of the latter's "offices do not promptly receive our instructions or act upon them no issue will be raised on account of such distribution after July 20, 1944." It appeared that Loew's did send notices promptly to all its offices not to make any further contracts for the exhibi-

tion of the picture. The plaintiff received $874.20 from Loew's after July 20, 1944, for exhibitions of "Topper" but there was no evidence to show when those exhibitions took place or when the contracts under which they were exhibited were made. The receipt of this amount was the alleged breach by the plaintiff on which the defendant based its counterclaim.

It is apparent from this record that the trial judge had ample evidence on which to find, as he did, that the defendant's failure to pay the royalties which concededly had accrued "was deliberate and without justification." Under these circumstances the right to rescind for which the plaintiff contracted is enforceable. Having complied with the terms of its contract the plaintiff may enforce those terms against a willful defaulter who has created the conditions which the parties agreed should bring about a termination. Weber and Fields v. Mapes, 1st Dept. 98 App.Div. 165, 90 N.Y.S. 225; 2 Black, Rescission of Contracts (2nd Ed. 1929) 1278-79.

■ The alleged breaches of the original contract in failing to deliver certain films were not found but were being arbitrated in a separate proceeding. Yet even if they had been proved they would have been breaches of what had, in effect, become an independent contract between the parties and would have afforded no legal excuse for the defendant's breach of the "Topper" contract. Dixon & Co. v. Bronston Bros. & Co., Inc., 1st Dept. 171 App.Div. 552, 157 N.Y.S. 385; Levi v. L. A. Thompson Scenic R. Co., Sup., 128 Misc. 465, 218 N.Y.S. 666.

■■ Though it is often correctly said that equity will not enforce forfeitures and that principle is given effect in New York decisions, see Noyes v. Anderson, 124 N.Y. 175, 26 N.E. 316, 21 Am.St.Rep. 657; Helgar Corp. v. Warner's Features, Inc., 222 N.Y. 449, 119 N.E. 113; People's Bank v. Mitchell, 73 N.Y. 406, it is, of course, not to be taken as an absolute. Even though the payment of money was the only substantial benefit for which the plaintiff contracted, where, as here, failure to pay was but the exercise of a deliberate choice unjustified on the known facts, the party so in default having repudiated in a way that substantially defeated the contract may not continue to reap its benefits. To allow that would permit it to take all for which it contracted and do that not on the contract terms but upon its own modification of them. See, Callanan v. Keeseville A. C. & L. C. R. R., 199 N.Y. 268, 92 N.E. 747; De Mille Co. v. Casey, 115 Misc. 646, 189 N.Y.S. 275.

What has already been said sufficiently disposes of the dismissal of the counterclaim on the merits. The evidence did not show anything due the defendant from the plaintiff and left the counterclaim unproved.

Affirmed.