OPINION OF THE COURT
Raymond E. Cornelius, J.
Pursuant to the provisions of CPL 210.30, a motion has been made to inspect the Grand Jury minutes, and for dismissal of the indictment. The first three counts of the indictment accuse the defendant of the crime of insurance fraud in the first degree, in violation of section 176.20 of the Penal Law of the State of New York, in connection with three separate insurance policies issued by different insurance companies, for personal property owned by the defendant. The court’s inspection of the Grand Jury minutes discloses that these criminal charges were based, in significant part, upon a standard clause, contained in each of the three insurance policies, limiting liability in the event of other insurance coverage, together with the fact that the defendant represented that he did not have such concurrent insurance in submitting claims of loss for the same *822 personal property. The fourth and final count of the indictment charges the crime of perjury in the first degree, in violation of section 210.15 of .the Penal Law of the State of New York, based upon claimed false testimony given in law offices of attorneys representing two of the insurance companies, and, specifically, statements made by the defendant to the effect that he did not have other insurance coverage.
The defendant, by his counsel, relies upon the definition of insurance fraud, as contained in section 176.05 of the Penal Law, which requires materiality to be established as an essential element of the crime. This section, in relevant part, reads as follows: “A fraudulent insurance act is committed by any person who, knowingly and with intent to defraud presents * * * to * * * an insurer or purported insurer, or any agent thereof * * * a claim for payment or other benefit pursuant to an insurance policy for commercial or personal insurance which he knows to: (i) contain materially false information concerning any fact material thereto; or (ii) conceal, for the purpose of misleading, information concerning any fact material thereto.” (Emphasis added.) In essence, the defendant contends that the failure to disclose other insurance coverage, in connection with submitting each of his proofs of loss of his personal property, could not be material because his total loss exceeded the combined liability coverage of the three policies, and, therefore, each of the insurance companies would not be relieved from payment of the respective policy limits. At the time of the loss, which resulted from an alleged burglary at the defendant’s residence on September 5, 1983, the total liability coverage for the three insurance policies maintained in effect was $68,000 (Travelers Ins. Co. — $28,000, General Acc. Ins. Co. — $25,000, Royal Ind. Co. — $15,000).
The clause in question, which applies in cases where an insured maintains concurrent insurance on the same property, provides, in effect, that an insurance carrier is not necessarily liable for the policy limits but only the percentage which such amount bears to the total amount of insurance covering the loss. As aforesaid, this is a standard clause contained in various types of insurance policies, and *823 has been sanctioned by the Legislature. (See, e.g., Insurance Law, § 168, subd 3, par [a].) Thus, for example, if the total loss sustained as a result of the burglary had been the same as the limit of liability, as contained in the Travelers policy, to wit, $28,000, the Travelers Insurance Co. would only be responsible for paying approximately $11,500. If this insurance carrier, in such an instance, were unaware of the other insurance coverage and paid the defendant the full amount of such a loss, to wit, $28,000, they would have been defrauded by an amount in excess of $16,000. Article 176 of the Penal Law, which contains the definition of insurance fraud as well as the different degrees thereof, was part of the Insurance Frauds Prevention Act, which was enacted by chapter 720 of the Laws of 1981. The Governor’s memorandum, upon approving the legislation, states as follows: “The amendments to the Penal Law, particularly the classification of insurance fraud involving pecuniary values in excess of fifteen hundred dollars as class D felonies, track the classifications for larcenies and will be an indication by the Legislature that the State will no longer tolerate crime in the insurance field, and should encourage the prosecution of such crimes by prosecutors.” (McKinney’s Session Laws of NY, 1981, p 2618.) The felony crime of insurance fraud in the first degree, as well as second degree, require a defendant, by his conduct, to attempt or actually take, obtain, or withhold property in excess of a specified value. This, of course, is analogous to the degrees of larceny. Although the misdemeanor crime of insurance fraud in the third degree does not include the theft of property as a necessary element, materiality must nevertheless be established.
This court would hold that the attempted or actual taking, obtaining or withholding of insurance proceeds, to which an insured is not entitled under the terms of the contract, would establish the element of materiality, or as a minimum, the insurance company must have been adversely affected in some manner. Thus, in the hypothetical example, posed by the court, any representation by the defendant, which resulted in a monetary loss in excess of $16,000, would certainly be material. The same would be true in any case where a misrepresentation, concerning *824 other insurance coverage, would result in a difference in the amount paid by the insurance company to the insured.
Nevertheless, as a matter of simple mathematics, in the pending case or any case where the total loss is either equal to or exceeds the total amount of insurance coverage, the insurance carrier would be responsible for payment of the full liability limit, as contained in the policy, regardless of the existence of other insurance policies. Assuming the defendant’s total claim to be otherwise valid, Travelers Insurance Co., for example, would be required to pay him $28,000, whether based upon the liability limit set forth in the policy, itself, or based upon the percentage of the loss which such amount bears to the total amount of insurance coverage. It is apparent to the court that a primary reason for a clause of the types involved in this case, whereby liability is limited to a percentage of the total insurance coverage, is to prevent an insured from collecting more proceeds than his actual loss. However, this would not occur where the actual loss is equal to or exceeds the total amount of insurance coverage. In such a situation, an insured’s misrepresentation concerning the existence of other insurance coverage would not be material because it would not affect the amount of payment by the insurance company, again assuming that the total claim is otherwise valid. There was no evidence to indicate that the defendant’s misrepresentations were, in any other way, material.
A review of the Grand Jury minutes discloses that the application of the standard clause to the facts in this case was a concern to the grand jurors, but was never clarified for them. In fact, several witnesses, who were representatives from several of the insurance companies, provided interpretations which may have been misleading. For instance, one witness, in response to a question by a grand juror concerning whether or not the defendant would have been paid by all of the companies had he disclosed the other coverage, testified that, in such event, “we would work together with the other companies to offer him a fair settlement and do that quite often.” A grand juror then asked for clarification and the witness testified as follows: *825 “There is a formula that is utilized in the proportion of losses and it basically bears to the loss the portion of the policy that you have. It goes in fractions because he has fifteen with us and fifteen with another does not mean he would be paid the entire amount by us. It is the percentage of insurance that we carry versus the other companies brought to play to the loss. It is a complicated formula. Then it is easy to use it once you have used it. It is a lot easier if each policy is the same but it never is.” This witness was employed as a claims representative for the Royal Insurance Co., and his answer that his company would not necessarily be responsible for payment of $15,000 would be correct, but, as above explained, only if the total loss did not exceed the total insurance coverage.
There was some indication that the District Attorney, in this case, was proceeding upon the theory that the total insurance claim, made by the defendant, was invalid because he included tools and/or other equipment used in his business. However, witnesses, representing two of the insurance carriers, testified that their respective policies would not exclude such items from coverage if maintained in the defendant’s residence, and, in this regard, there was no proof to the contrary. A witness, who was a claims representative for the third insurance company, testified that his particular policy did exclude business property located in the residence, and, further, that the defendant was aware of such provision based upon earlier conversations. Nevertheless, the express provisions of the insurance policy, which was submitted into evidence, would appear to exclude business property only pertaining to a business actually conducted on the “residence premises”. Furthermore, unlike the procedure followed with respect to the other two policies, an itemized list of the stolen items does not appear to have been introduced into evidence in connection with the claim to this particular insurance carrier. It is therefore difficult to ascertain what items of business property were included within the claim. Finally, proof was submitted that the defendant had purchased a telephone answering device, which he subsequently exchanged for a less expensive model, and the amount of his claim included the value of the original equipment. However this *826 difference was minimal, and not material when taken in context of the total number of items stolen and the total value.
As previously indicated, the count, pertaining to the charge of peijury, was based upon separate examinations conducted of the defendant by attorneys representing the insurance carriers. In two such examinations, the defendant allegedly testified, in effect, that he did not have any other insurance coverage. In order to constitute peijury in the first degree, a defendant’s false statement must consist of testimony and be “material to the action, proceeding or matter in which it is made.” (Penal Law, § 210.15.) “Téstimony” is defined as “an oral statement made under oath in a proceeding before any * * * person authorized by law to conduct such proceeding and to administer the oath”. (Penal Law, § 210.00, subd 3.) The type of examinations conducted in this case are contemplated by the Insurance Law, and could be the subject of a prosecution for perjury. (See Insurance Law, § 171; People v Berger, 197 Misc 915.) Although transcripts of these examinations were produced, before the Grand Jury, there was no evidence that the reporters, who allegedly administered the oath, were authorized to do so. This, of course, is a necessary element for either perjury in the first degree or perjury in the third degree, when the latter is based upon the giving of “testimony”. Perhaps more significant, however, is the second essential element to establish perjury in the first degree, namely, materiality.
The issue of materiality has already been discussed in connection with the charges of insurance fraud, and the same reasoning would apply in regard to the charge of perjury in the first degree. In other words, false testimony, to the effect that the defendant did not have other insurance coverage, would be material only if it altered the insurance carrier’s financial liability, or, otherwise, adversely affected the carrier’s position.
For the above reasons, it is hereby ordered that the motion to dismiss the indictment is hereby granted.