OPINION OF THE COURT
Bernard J. Fried, J.
Defendants Adam Cohen, Stanley Cohen, Jamie K. C. Scher (nee Jamie Cohen), Todd Spehler and Eileen Torrillo are charged in a 27-count indictment, which includes 21 counts of perjury in the first degree. At issue is whether the State of New York has jurisdiction over these perjury charges, and whether New York’s perjury statute encompasses perjury, before the National Association of Securities Dealers (NASD).
This prosecution arises out of an investigation initially conducted by the NASD. Briefly, in 1973 defendant Stanley Cohen, pursuant to a settlement with the Securities and Exchange Commission (SEC), was barred from associating with any broker-dealer or investment advisor, absent further order of the SEC permitting him to become so associated, after two years, “in a non-supervisory, non-proprietary capacity.” On November 14, 1994, the SEC authorized him to work at Gaines, Berland, Inc., a securities firm, where his son, defendant Adam Cohen, had been employed since 1993.
Thereafter, in the beginning of 1996, defendant Adam Cohen left Gaines and joined Renaissance Financial Securities Corp. (Renaissance), a registered broker-dealer, owned by defendant Spehler. His father also joined the firm. At the end of the year, Jamie K. C. Scher, defendant Stanley Cohen’s daughter, who is also an attorney-at-law, joined Renaissance as well. In *119 September 1997, defendant Stanley Cohen reapplied to NASD for registration by filing a form MC-400. On October 20, 1997, NASD responded, declared that he was a statutorily barred person, and ordered him off Renaissance’s premises. NASD thereafter commenced an investigation of Renaissance, during the course of which it conducted on-the-record interviews, which were authorized to be taken under oath or affirmation, pursuant to NASD rule 8210. It is these interviews of defendants Adam Cohen, Stanley Cohen, Jamie K. C. Scher, Todd Spehler and Eileen Torrillo which form the basis for the peijury counts.
The defendants’ threshold argument, in seeking dismissal of the perjury counts, is that a State court lacks jurisdiction over a prosecution for perjury committed before the NASD. Because the NASD rules were recently amended (and approved by the SEC), effective August 7, 1997 (SEC Release No. 34-38908, 1997 WL 441929), to clarify its authority to administer an oath, and because it appears that this is the first prosecution, anywhere, for perjury before the NASD, this is a novel issue of importance which I consider first.
Relying on In re Loney (134 US 372, 375 [1890]), in which the Supreme Court of the United States held that the Federal courts have sole and exclusive jurisdiction over perjury committed “in a court or other judicial tribunal of the United States,” the defense argues that since “the NASD is in significant respects a federal tribunal and its officers are, in significant respects, federal officers,” this prosecution may not be brought in the courts of the State of New York. An interrelated argument is that the NASD is charged with enforcing and regulating Federal law, and it is therefore the Federal Government whose sovereign interests are affected, and not those of the State of New York. The People respond that, since NASD is a private corporation, it cannot be considered a Federal tribunal, and thus Loney is inapplicable. Moreover, the People further contend that New York is affected by perjury before NASD involving a New York State registered securities dealer.
Essential to a determination of the Loney issue is a clear understanding of what precisely is the NASD; the NASD “is not a governmental agency, but rather a private corporation organized under the laws of Delaware” (Jones v Securities & Exch. Commn., 115 F3d 1173,. 1183 [4th Cir 1997]) in 1939 (NASD manual, at 1011 [certificate of incorporation, as amended]). It functions as an industry membership organization responsible for the regulation of over-the-counter markets, *120 which operates under the “aegis” of the Securities Exchange Act (Exchange Act) of 1934 (15 USC § 78a et seq.) (Karmel, Blue-Sky Merit Regulation: Benefit to Investors or Burden on Commerce?, 53 Brook L Rev 105, 113 [1987]). NASD is a self-regulatory organization (SRO). “It was not created by statute. None of its directors or executives are government officials or appointees. It receives no government funding” (United States v Shvarts, 90 F Supp 2d 219, 222 [ED NY 2000, Glasser, J.]; see also, Desiderio v National Assn, of Sec. Dealers, 191 F3d 198, 206 [2d Cir 1999]).
As explained in Austin Mun. Sec. v National Assn. of Sec. Dealers (757 F2d 676, 680 [5th Cir 1985]), the Maloney Act (15 USC § 78o-3 et seq.) “established extensive guidelines for the formation and oversight of self-regulatory organizations, such as the NASD, and the registered stock exchanges * * * Congress delegated power to these organizations to enforce, at their own initiative, ‘compliance by members of the industry with both the legal requirements laid down in the Exchange Act and the ethical standards going beyond those requirements.’ ” The SEC was given “broad supervisory responsibilities over” the NASD, including subjecting it to “extensive oversight, supervision, and control by the SEC on an ongoing basis” (Austin Mun. Sec. v National Assn. of Sec. Dealers, at 680). This discussion was necessary to Austin’s issue of whether the defendant NASD, its staff, and its disciplinary officers (and their member firms) were entitled to the absolute immunity granted to government officials, when they, as “private individuals and organizations * * * work in quasi-governmental capacities.” (Id., at 689.) The court found an analogy in private Bar Association disciplinary committees, members of which are granted such immunity (there was no immunity as to the member firms which employed the disciplinary committee members). This, however, was not a conclusion that the NASD is a Federal agency. In determining that the NASD, as an entity, was entitled to such immunity, the Fifth Circuit determined that its actions were akin to the SEC, but pointedly wrote that unlike the SEC, “the NASD possesses no sovereign power” (id., at 692). As to the staff members, the case was remanded to the District Court to determine if they were acting in a prosecutorial role; if so, then they, too, would enjoy absolute immunity.
This regulatory scheme was designed by Congress “to establish a ‘cooperative regulation’ where [the NASD] would regulate [itself] under the supervision of the SEC” (Jones v Securities & *121 Exch. Commn., supra, at 1179; Notes & Comments, Jones v. SEC: Upholding the SEC’s Ability to Impose Sanctions in Addition to Those of the NASD, 51 Admin L Rev 989, 992, n 11 [1999], quoting Sen Rep No. 75-1455, 75th Cong, 2d Sess [Jan. 5, 1938] [Congress sought “to avoid ‘a pronounced expansion of the organization of the Securities and Exchange Commission; the multiplication of branch offices; a large increase in the expenditure of public funds; an increase in the problem of avoiding the evils of bureaucracy; and a minute, detailed, and rigid regulation of business conduct by law’”]). In United States v National Assn. of Sec. Dealers (422 US 694, 701, n 6 [1975]), the Supreme Court noted that the “Maloney Act supplements the Securities and Exchange Commission’s regulation of the over-the-counter markets by providing a system of cooperative self-regulation through voluntary associations of brokers and dealers * * * The Act also authorizes the SEC to exercise a significant oversight function over the rules and activities of the [NASD].” (See generally, Poser, Reply to Lowenfels, 64 Cornell L Rev 402 [1979].)
Moreover, the SEC itself has stated that “[w]hen Congress provided for self-regulatory associations of securities dealers such as the NASD, it clearly did not intend to create formalistic tribunals akin to the courts or even to this Commission.” (Matter of Cotzin, SEC Release No. 34-10850, 45 SEC 575, 1974 WL 11424, *4 [June 12, 1974]; see also Matter of Smits, SEC Release No. 34-30787, 50 SEC 1020, 1992 WL 139352 [June 8, 1992]; Matter of Wilson, SEC Release No. 34-26425, 49 SEC 1020, 1989 WL 258177 [Jan. 6, 1989]; Matter of Ramos, SEC Release No. 34-26007, 49 SEC 868, 1988 WL 902244 [Aug. 18, 1988]; Matter of Perkins, SEC Release No. 34-19345, 47 SEC 847, 1982 WL 31734 [Dec. 16, 1982].) Although this statement by the SEC was made in the context of whether the NASD was subject to the Administrative Procedure Act (5 USC § 551 et seq.), it clearly demonstrates that the SEC, as it wrote, recognized that “the NASD is not a federal agency.” (Matter of Cotzin, 45 SEC 575, 1974 WL 11424, *3, supra.) Indeed, as early as 1944, the SEC pointed out that a committee of the NASD, in a disciplinary proceeding, makes its “determination in the light of their experience as technicians in the securities markets rather than as lay jurors or legalistic judges.” (Matter of National Assn. of Sec. Dealers, SEC Release No. 34-3623, 17 SEC 459, 1944 WL 976, *8 [Nov. 25, 1944].)
It is evident from this discussion that the NASD is neither “a court [nor a] judicial tribunal of the United States” (In re *122 Loney, 134 US, supra, at 374). The NASD is certainly not a Federal court, created under either article III or article I of the US Constitution. Moreover, of course, it is not de jure a Federal judicial tribunal since it was created under the laws of Delaware. Although not using the phrase, the defense contention is really that the NASD is a de facto Federal tribunal, describing it as a “quasi-governmental entity charged with enforcing federal laws.” While at least one Federal Circuit Court has so described NASD (Austin Mun. Sec. v National Assn. of Sec. Dealers, supra, at 692), this description does not transform its essential nature from private to governmental. Underlying this argument is the fact that the NASD is subject to Federal agency (SEC) and Federal court review, and the claim that it primarily, if not completely, is concerned with the enforcement of Federal securities laws. (See, Stone and Perino, Not Just a Private Club: Self Regulatory Organizations as State Actors When Enforcing Federal Law, 1995 Colum Bus L Rev 453 [1995] [arguing that constitutional protections should apply to SROs].)
While Congress certainly provided for comprehensive Federal regulation of the securities industry, and charged the SROs with the duty of self-regulation, the fact that the NASD is subject to extensive oversight by the SEC, and ultimately Federal court review, does not metamorphose the NASD into an organ of the Federal Government. This is clear from the authorities cited, all of which emphasize its private, nongovernmental character. Indeed, as one commentator has cogently observed: “As the securities industry has grown more complex, disciplinary procedures have evolved along more formal and ‘legalistic’ lines * * * Nevertheless, SRO proceedings remain different from those of courts and governmental agencies such as the SEC * * * If SRO disciplinary proceedings were to become merely a copy of those of the SEC, an important justification for having a system of self-regulation would disappear.” (Poser, op. cit., at 404-405.) Congress, in enacting the Exchange Act, could have imbued the SROs with the attributes of a Federal judicial tribunal, but it did not; instead “[t]he concept of self-regulation * * * pervades the provisions of the Securities Exchange Act of 1934 and its subsequent amendments” (Merrill Lynch, Pierce, Fenner & Smith v National Assn. of Sec. Dealers, 616 F2d 1363, 1366 [5th Cir 1980]).
Although the authorities cited seem sufficient to defeat the defense claim that the NASD is an exclusive Federal tribunal, it should be added that NASD’s certificate of incorporation *123 provides that its corporate purposes include: “to encourage and promote among members observance of Federal and state securities laws” (NASD manual, op. cit., at 1011). In this regard, NASD Regulation, Inc. (NASDR), a separate, independent subsidiary of NASD, created in 1996, has been delegated the responsibility “c. To take necessary or appropriate action to assure compliance with * * * the federal securities laws, and other laws” (id., at 1102). NASDR has also been delegated the responsibility “q. To manage external relations on enforcement, regulatory, and other policy issues with * * * state regulators” (id., at 1103). It is also noteworthy that the broker-dealers not only must register with the NASD, but they “must also register with the state securities commissions in the states in which they operate, since the blue sky laws of all American jurisdictions require broker-dealer registration” (Bloomenthal, Holme, Roberts and Owen, Securities Law Handbook, at 1467 [1997 ed]). Significantly, the Attorney General of the State of New York, who has statutory responsibility over security brokers, dealers, and salespersons (General Business Law art 23-A), has promulgated regulations delegating the registration function to the Central Registration Depository (CRD), which is maintained by NASDAQ, a subsidiary of the NASD (13 NYCRR part 10). It has been said that the CRD “facilitates one-stop filing for broker-dealers” (Bloomenthal, op. cit., at 6, n 3).
This reinforces the People’s argument that the NASD is not exclusively concerned with Federal law. Although even if it were, my conclusion that Loney (supra) does not preclude State jurisdiction would be unchanged, since NASD is fundamentally a private entity, regardless of whether it may function on a national level and pursue what is essentially a national interest. Thus, there is no merit to the federalism concerns expressed by the defense, that to permit this prosecution “would inevitably lead to conflict between the federal and state governments.” This language was drawn from Loney’s concern that “[t]he administration of justice in the national tribunals would be greatly embarrassed and impeded if a witness testifying before a court of the United States * * * were liable to prosecution and punishment in the courts of the State upon a charge of perjury, preferred by a disappointed suitor or contestant, or instigated by local passion or prejudice.” (In re Loney, 134 US, supra, at 375.) The short and simple answer is that the NASD is neither a “court” nor a “judicial tribunal” of the United States. Thus, there can be no federalism concern.
*124 It is also clear from close examination of the handful of cases which have dealt with Loney (supra), that none of them are really helpful since none of them concern a private nongovernmental entity. They restate the Loney rule, which is not in dispute; what is disputed is its application. For example, in People v Acker (201 NY 560 [1911]), the Court held that perjury in connection with an application made to the United States Patent Office was not cognizable in State court. Another example is People v Iadarola (85 Misc 2d 271 [Sup Ct, NY County 1975]), which precluded a State perjury prosecution where one of the alleged false statements occurred in a United States Bankruptcy Court. Other cáses, from outside New York cited by the parties, similarly do not deal with perjury before a private nongovernmental entity and I see no need to discuss them.
Having concluded that the State of New York is not barred, on Loney grounds, from prosecuting the perjury counts, I turn to an additional argument advanced for dismissal of the perjury counts, i.e., that this prosecution does not fall within the perjury statute, section 210.15 of the Penal Law, which provides that “[a] person is guilty of perjury in the first degree when he swears falsely and when his false statement (a) consists of testimony, and (b) is material to the * * * proceeding * * * in which it is made.” Testimony is defined in Penal Law § 210.00 (3) as “an oral statement made under oath in a proceeding before any court, body, agency, public servant or other person authorized by law to conduct such proceeding and to administer the oath or cause it to be administered.” It is contended that proper statutory construction requires that the word “proceeding” be construed to mean a proceeding “in New York State tribunals or before officers of New York State and/or its political subdivisions pursuing a public resolution of interests,” and that NASD on-the-record interviews cannot be considered such a “proceeding.” Cited in support of this argument is People v Uhrey (169 Misc 2d 1015 [Sup Ct, Kings County 1996]), where it was held that a false statement during a meeting with an Assistant District Attorney, during the course of an investigation, does not fall within the perjury statute, since it was not made in the course of a “proceeding.” This argument too narrowly construes the statute.
While there are few reported decisions dealing with this issue, People v Berger (197 Misc 915 [Sup Ct, Monroe County 1950]), dealing with a predecessor perjury statute, permitted a pequry prosecution involving the examination of an insured by *125 an insurance carrier as required by the policy, and permitted by the Insurance Law. Clearly, this was not a proceeding before an officer of the State or its political subdivision. (See also, People v Merz, 125 Misc 2d 821 [Monroe County Ct 1984].) Moreover, as described, section 210.00 (3) refers to “a proceeding before any court, body, agency, public servant or other person authorized by law to conduct such proceeding and to administer the oath or cause it to be administered.” This language does not so limit the scope of the word “proceeding” as contended by the defense.
This observation is consistent with People v Martin (175 NY 315, 319 [1903]), where the Court, also dealing with an earlier perjury statute, stated that “[t]he evident purpose of the legislature was to adopt a statute which would include and provide for the punishment of the act of taking a false and corrupt oath in this state whenever it was required or permitted by our laws or by the laws of any other state or commonwealth that might be regarded or treated as valid here.” It certainly would not achieve these legislative purposes, which no doubt apply to the present perjury statute, to accept the limitations defendants seek to read into the perjury statute. Permitting prosecution in New York for false statements made before a notary in New York, in connection with an oath required by the State of Delaware, the Martin Court crisply concluded that “[t]he infraction of the criminal law, for which the defendants are indicted, was that of our own state which forbids the taking of a false and corrupt oath whenever lawfully permitted or required.” {Id., at 323.)
The reach of the perjury statute extends to an on-the-record interview conducted in this State by the NASD. In the language of the statute, it is a “proceeding before any court, body, agency, public servant or other person authorized by law to conduct such proceeding and to administer the oath or cause it to be administered” (Penal Law § 210.00 [3]). Contrary to the defense argument that the word person is limited to its preceding phrase, “public servant,” the word “person” is not so limited; otherwise it would be redundant, since the Penal Law defines “person” as “a human being, and where appropriate, a * * * private corporation.” (Penal Law § 10.00 [7].) Of course, such definition includes the NASD, which is a private nonprofit corporation. Moreover, the NASD is authorized by law to conduct such proceeding and to administer an oath. In 1997, the SEC, acting in accordance with its congressionally delegated responsibility, with limited exceptions not relevant *126 here, to approve all NASD rules prior to their implementation (15 USC § 78s [b]), and in the exercise of its regulatory authority, approved rule 8000 Series — “Investigations and Sanctions” (SEC Release No. 34-38908, op. cit.), including rule 8210 which clarified that the NASD “may require a member, a person associated with a member, or a person still subject to [NASD’s] jurisdiction to testify under oath or affirmation if requested” (SEC Release No. 34-38545, 1997 WL 211525, *36).
It is therefore evident that Penal Law § 210.15 prohibits perjury committed during a NASD on-the-record interview, conducted within the State of New York, and a dismissal on the ground that the section does not criminalize perjury at such a proceeding is denied.
Accordingly, for the foregoing reasons, the motion to dismiss the perjury counts is denied.
[Portions of opinion omitted for purposes of publication.]